IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DELANO O. N.,[1] | ) Civil No.: 6:17-cv-01495-JE |
| Plaintiff, | ) OPINION AND ) ORDER |
| v. | ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, Defendant. | ) ) ) ) |

JELDERKS, Magistrate Judge:

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff requests that the Court reverse the Commissioner's decision and remand this action to the Social Security Administration (the Agency) for an award of benefits or, in the alternative, for further proceedings.

For the reasons set out below, the Commissioner's decision is affirmed.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties. Where applicable, the same designation is used for a non-governmental party's immediate family member.

OPINION AND ORDER – 1

## Procedural Background

Plaintiff filed an application for SSI benefits on December 12, 2013, alleging disability as of the same date. After his claim was denied initially and upon reconsideration, Plaintiff requested an administrative hearing.

On June 23, 2016, a hearing was held before Administrative Law Judge (ALJ) Britannia Hobbs. Plaintiff and Nancy Bloom, an impartial vocational expert (VE), testified at the hearing. Plaintiff was represented by counsel.

In a partially favorable amended decision dated October 18, 2016, the ALJ found that Plaintiff was disabled as of July 23, 2015, the date he turned age 55, but was not disabled prior to that date.

On July 19, 2017, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1960 and was 56 years old at the time of the ALJ's decision. He completed 7th grade and has past relevant work as a furniture mover/driver and an odd-job worker.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

<u>Step Two</u>. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

<u>Step Three</u>. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

<u>Step Four</u>. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

<u>Step Five</u>. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this

burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

At Steps One through Four, the burden of proof is on the claimant.  *Tackett*, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id*.

## ALJ's Decision

At Step One of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.

At the second step, the ALJ found that Plaintiff's degenerative disc disease was a severe impairment.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC). She found that Plaintiff retained the functional capacity to perform light work except that he could frequently climb ramps, stairs, ladders, ropes, or scaffolds and he could occasionally balance. In making this determination the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not fully supported by the medical evidence and evidence of his daily activities.

At Step Four, the ALJ found that since December 12, 2013, Plaintiff had been unable to perform any of his past relevant work.

The ALJ then determined that on July 23, 2015, Plaintiff's age category changed from an individual approaching advanced age to an individual of advanced age.

At Step Five, the ALJ found that prior to July 23, 2015, the date on which Plaintiff's age category changed, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Based upon interrogatory responses from the VE, the ALJ cited motel cleaner, price marker, and packing line worker as representative of the work Plaintiff could perform prior to July 23, 2015. The ALJ then found that beginning on July 23, 2015, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform.

Based on these conclusions, the ALJ found that Plaintiff was not under a disability within the meaning of the Act prior to July 23, 2015 but became disabled on that date and continued to be disabled through the date of her decision.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied,* 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## Discussion

Plaintiff asserts that the ALJ improperly rejected his subjective symptom testimony; failed to give legally sufficient reasons for not fully crediting the opinion of his treating physician, Michelle Taube, M.D.; improperly rejected lay witness evidence; and failed to meet her burden at Step Five.

### I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

When evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record, including the claimant's activities of daily living ("ADLs"); the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their

effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c); SSR 96-7p; SSR 16-3p. If substantial evidence supports the ALJ's determination, it may be upheld even if some of the reasons cited by the ALJ are erroneous. *Carmickle v. Comm'r of Sec. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, there was no evidence of malingering and, therefore, the ALJ was required to provide clear and convincing reasons to support her rejection of Plaintiff's statements regarding the severity of his symptoms. The ALJ discounted Plaintiff's subjective symptom allegations as inconsistent with the medical evidence and his activities of daily living.

In applying for benefits, Plaintiff reported he was prevented from working due to pain and stiffness with motion; and difficulty walking, lifting, squatting, bending, standing, sitting, kneeling and stair climbing. Tr. 174, 177. At the hearing, Plaintiff testified that he has pain in his neck, lower lumbar, left shoulder and down his left sciatic nerve. Tr. 46. He testified he cannot walk well or for very long, he limps sometimes and is slow when bending. Tr. 46-47. He is taking hydrocodone for pain and sertraline for depression. Id.

The ALJ acknowledged MRI findings in December 2012, April 2014, and May 2014 that demonstrated disc degeneration of the lumbar spine, multi-level spondylosis, mild to severe spinal stenosis of the lumbar spine, and moderate multilevel stenosis of the cervical spine with a paracentral disc protrusion in the thoracic spine with some neurological involvement. Tr. 18. The ALJ also noted that upon examination, Plaintiff had demonstrated some decreased range of motion with extension in his back, positive indication on the right during straight leg-raising tests, pronounced right-sided foot drop, decreased range of motion in flexion and extension of

the cervical and thoracic spine as well as pain with rotation, and mildly decreased strength in the left arm with some decreased muscle tone. Id.

The ALJ determined that Plaintiff's degenerative disc disease was a severe impairment. However, based on the medical record, she found that the evidence did not support the severity of the claimant's alleged symptoms prior to the established onset date of July 23, 2015. At an exam on December 4, 2012, his first visit with a physician since 2003, Plaintiff reported his back pain was anywhere from 2-5 on a scale of 1-10, was located in his right lower back, radiated down his right leg and he occasionally had some weakness. Tr. 272. Nonetheless, as noted by the ALJ, Plaintiff's back was nontender to palpation, he could flex to 60 degrees, was "somewhat limited" in extension, did well with rotation, strength was 5 out of 5 and sensation was intact. Tr. 274. The ALJ also noted that in January 2013 Plaintiff reported to his treating provider that his back pain was not interfering with his daily activity, his symptoms had improved, and he was doing better with symptomatic care. Tr. 248-249.

During a consultative examination with Dr. Jonathan Harrison on September 7, 2013, Plaintiff reported progressive lower back pain starting 10 to 15 years prior. Tr. 279. Upon examination, Plaintiff demonstrated a slight limp, normal toe gait, and a noted lack of extension of the right foot secondary to a gunshot wound Plaintiff suffered in 1980. No assistive device was used or needed. Tr. 281. Plaintiff exhibited some decreased range of motion in his back and neck, but motor strength was 5/5 in the upper and lower extremities except 4/5 in his right leg and grip strength was 5/5 bilaterally. Tr. 281-282. Straight-leg raise was normal in the sitting and supine position. Tr, 282.

During an office visit on January 20, 2014, Plaintiff reported he had been experiencing a "low back problem for about a month." Tr. 295. Pain was worse in a sitting position and Plaintiff

was taking 6-8 aspirin a day without relief. Id. Upon examination, Plaintiff was nontender to the lumbar paraspinous muscles, appeared comfortable moving around the exam room, had good range of motion to his lumbar spine in flexion but very limited in extension, good range of motion with bilateral rotation but with complaints of pain, strength was 5 and sensation was intact. Tr. 296.

When evaluated by neurosurgeon, Dr. Miller, on May 20, 2014, Plaintiff had no limp but some appearance of stiffness in his gait. He had full range of motion in his lumbar spine with no pain with motion and he ambulated without an assistive device. Tr. 333.

The ALJ cited medical records that reflected Plaintiff experienced only mildly limited range of motion and mildly decreased muscle strength. She also noted that treatment had been very conservative, consisting largely of prescription medication. In May 2014, Dr. Christopher Miller recommended cervical and lumbar spinal surgery. Tr. 330. Insurance would not provide coverage for the procedures until Plaintiff had been a nonsmoker for six months. In April of 2015, the last medical visit documented in the administrative record, Dr. Taube referred Plaintiff back to Dr. Miller because Plaintiff had stopped smoking in September 2014. Tr. 358. However, at the hearing in July of 2016, Plaintiff testified that he had not "got around to setting [the surgery] up yet." Tr. 48, 357.

Plaintiff offers an alternative interpretation of the record. However, after a thorough review of the evidence, I conclude that Plaintiff's conservative course of treatment and inconsistency between the medical record and Plaintiff's allegations of disabling impairment were valid reasons to discount those allegations. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (holding that whether alleged symptoms are consistent with the medical evidence is a relevant consideration) (citations omitted); *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012)

(quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)) (internal quotation marks omitted)(ALJ may rely on unexplained, or inadequately explained failure to seek or follow course of treatment).

The ALJ also discounted Plaintiff's allegations of disabling symptoms based on his activities of daily living. The ALJ noted that Plaintiff was able to perform adequate self-care, prepare simple meals, do household chores and go out to the store. Tr. 19. The ALJ also noted that as recently as April 2014, Plaintiff was able to mow the lawn and that he rides his bike every other day. While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987); "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir. 2014). The ALJ reasonably found Plaintiff's activities inconsistent with his allegations of debilitating impairments.

Plaintiff's alternative interpretation of the record, notwithstanding, substantial evidence supported the ALJ's determination. Inconsistency with the medical record and activities of daily living and Plaintiff's conservative course of treatment were permissible grounds upon which to discount Plaintiff's subjective symptom allegations.

## II. Medical Opinion Evidence

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti,* 533 F.3d at 1041. In reviewing an ALJ's decision, the court does not assume the role of factfinder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts

and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Id.* A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's daily activities. *Tommasetti*, 533 F.3d at 1040. An ALJ need not accept a doctor's medical opinion that "is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005)(citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001)).

Plaintiff's treating physician, Dr. Michelle Taube, provided a medical evaluation report dated July 17, 2014. Tr. 342-345. Dr. Taube diagnosed Plaintiff with lumbar spinal stenosis, cervical spondylosis with myelopathy and spondylolisthesis. Tr. 342. She wrote that these conditions could be repaired surgically once Plaintiff had been a nonsmoker for six months. Id. She described Plaintiff's symptoms as neck pain with numbness in both arms and low back pain with numbness in both legs. Id. When asked how long Plaintiff could stand and walk in an 8-

hour workday, Dr. Taube marked "Unknown" and wrote "pt. reports no." Tr. 344. As to sitting with normal breaks, Dr. Taube again marked "Unknown" and wrote "pt. reports pain from sitting." Id. Dr. Taube indicated that Plaintiff should never lift even less than 10 pounds, could reach in front of his torso bilaterally up to 1/3 of the day and would be able to use his hands to perform fine manipulations 2 hours in an 8-hour period and gross manipulations for 2 hours in an 8-hour period. Id. She opined that Plaintiff would miss more than 2 days of work per month due to his medically determinable impairments. Tr. 345.

The ALJ gave Dr. Taube's July 2014 opinion "little weight." Tr. 19. She concluded that the opinion was inconsistent with the medical record and Plaintiff's reported activities. Id. These were valid reasons supported by substantial evidence in the record. *Tommasetti*, 533 F.3d at 1040 (inconsistency with the medical records, or inconsistency with a claimant's daily activities are specific, legitimate reasons for rejecting a physician's opinion); *Ghanim*, 763 F.3d at 1161 (ALJ may reject an opinion when it conflicts with the doctor's own treatment notes)(citing *Molina*, 674 F.3d at 1111-12). As discussed above, the record contains conflicting evidence and Plaintiff argues for an interpretation that supports a determination of disability. However, the law is clear that "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041-42 (citing *Andrews*, 53 F.3d at 1039-40). Even if there are other reasonable interpretations of the evidence, the court will not "second guess" an ALJ's reasonable interpretation if it is supported by substantial evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ's interpretation of the record was reasonable and supported by substantial evidence. Accordingly, this Court will not set aside the ALJ's determination.

### III. Lay Witness Evidence

Lay testimony describing a claimant's apparent symptoms and activities is competent evidence which must be considered by an ALJ. *Molina*, 675 F.3d at 1114 (citing *Nguyen v.*

OPINION AND ORDER – 12

*Chater*, 100 F.3d 1462, 1467 (9th Cir. 1995)). The ALJ must provide "germane" reasons for rejecting such evidence. *Dodrill v. Astrue*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff challenges the ALJ's treatment of lay witness evidence submitted by his niece, Ms. Erica W. Ms. W. submitted a Third-Party Function Report dated April 16, 2014. Tr. 194-201.The ALJ found that "significant weight could not be granted to [Ms. W.'s] statements, as they are not consistent with the preponderance of the medical and other evidence of record, as well as the opinions and observations by medical specialists in this case." Tr. 20. These were germane reasons for discounting the lay witness evidence. *Bayliss,* 427 F.3d at 1218 (inconsistency between evidence of record and lay witness's statements is germane reason for discrediting the lay witness's statements). The physical limitations stemming from Plaintiff's degenerative disc disease that Ms. W. described included Plaintiff's difficulty bending, walking, getting out of bed and getting out of the house. Tr. 194-199. As discussed above in conjunction with Plaintiff's statements, the ALJ properly found the severity of the symptoms alleged was inconsistent with the medical record. Ms. W. also reported Plaintiff had difficulty with becoming distracted, easily confused and doing things "backwards." Tr. 199. Plaintiff argues that this evidence is indicative of a "significant mental impairment." Pl. Brief at 15. However, in his application for benefits, the only mental impairment Plaintiff alleged was depression. The ALJ found this to be a non-severe impairment and determined that Plaintiff had no restrictions in any of the broad areas of functioning set out for evaluating mental disorders. Tr. 16. Plaintiff does not challenge that finding and the Court declines to consider an issue not previously presented to the ALJ or raised with specificity in the briefing. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). "[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); *see also*

*Carmickle,* 533 F.3d at 1161 n .2 (rejecting claimant's argument where he "failed to argue this issue with any specificity in his briefing").

As noted above, an ALJ need only provide "germane" reasons for discounting lay witness evidence. The ALJ satisfied that requirement here.

**IV. Step Five**

Finally, Plaintiff asserts that the ALJ's Step Five finding that he could perform other work in the national economy between his application date and July 23, 2015 was in error. Plaintiff argues that the ALJ's hypothetical to the VE failed to contain all of the limitations supported by the record. As discussed above, the ALJ properly discounted the opinion of Dr. Taube, Plaintiff's subjective complaints of disabling symptoms and the lay witness evidence. The ALJ was entitled to rely on VE testimony based on the hypothetical that included only those limitations she found supported by the record. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1163–65 (9th Cir. 2001) (only limitations supported by substantial evidence must be incorporated into RFC and dispositive hypothetical question posed to VE). Accordingly, there was no error.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

DATED this 14th day of August, 2019.

                                                         /s/ John Jelderks
                                            John Jelderks
                                            U.S. Magistrate Judge